Slip Op. 13-149

### UNITED STATES COURT OF INTERNATIONAL TRADE

---

QINGDAO MAYCARRIER IMPORT & : 
EXPORT CO., LTD., :
 :
        Plaintiff, :
 : Before: Nicholas Tsoucalas,
    v. : Senior Judge
 :
UNITED STATES, : Court No.: 13-00142
 :
        Defendant, :
 : PUBLIC VERSION
        and :
 :
FRESH GARLIC PRODUCERS :
ASSOCIATION, <u>et al.</u>, :
 :
        Defendant-Intervenors. :

---

### OPINION

[Plaintiff's motion for judgment on the agency record is denied.]

Dated: December 13, 2013

Robert T. Hume, Hume & Associates, LLC, of Ojai, CA for plaintiff.

Melissa M. Devine, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was George H. Kivork, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Michael J. Coursey and John M. Herrmann II, Kelley Drye & Warren LLP, of Washington, DC, for defendant-intervenors.

**Tsoucalas, Senior Judge:** Plaintiff Qingdao Maycarrier Import & Export Co., Ltd. ("Maycarrier"), moves for judgment on the agency record contesting defendant United States Department of

Commerce's ("Commerce") determination in <u>Fresh Garlic From the People's Republic of China: Final Rescission of Antidumping Duty New Shipper Reviews; 2010-2011</u>, 78 Fed. Reg. 18,316 (Mar. 26, 2013) ("<u>Final Rescission</u>").  Commerce and defendant-intervenors Fresh Garlic Producers Association, <u>et al.</u>, oppose Maycarrier's motion. For the following reasons, Maycarrier's motion is denied.

## BACKGROUND

In 1994, Commerce issued an antidumping duty order covering fresh garlic from the People's Republic of China ("PRC"). <u>See</u> <u>Antidumping Duty Order: Fresh Garlic From the PRC</u>, 59 Fed. Reg. 59,209 (Nov. 16, 1994).  Maycarrier made three entries of subject merchandise during 2011.  <u>See</u> Request for Antidumping New Shipper Review (Nov. 30, 2011), A-570-831, Public Rec. 2 at 1-2.[1]  In November 2011, Maycarrier requested a new shipper review ("NSR") to obtain an individual rate for its entries.  <u>Id.</u> at 1.  Commerce initiated the NSR in January 2012.  <u>See</u> <u>Fresh Garlic From the PRC: Initiation of NSRs</u>, 77 Fed. Reg. 266, 267 (Jan. 4, 2012).

In March 2013, Commerce rescinded Maycarrier's NSR. <u>Final Rescission</u>, 78 Fed. Reg. at 18,317.  Commerce found that Maycarrier was actually the same entity as Weifang Naike Foodstuffs Co., Ltd. ("Naike"), an exporter that entered subject merchandise

---

[1] Hereinafter, documents in the public record will be designated "PR" and documents in the confidential record designated "CR" without further specification except where relevant.

prior to the period of review.   See Issues and Decision Memorandum

for the Final Rescission of the Antidumping Duty NSRs of Fresh

Garlic from the PRC (Mar. 19, 2013), A-570-831, PR 194 at 3-6.

Commerce's analysis centered on three pieces of evidence: (1)

mutual links between the two companies Commerce discovered on

numerous business-to-business websites and Maycarrier's own

website; (2) Maycarrier's business registration form; and (3)

Maycarrier's tax records.   See Analysis of Maycarrier (Mar. 19,

2013), A-570-831, CR 108 at 1-8.

          Commerce placed evidence onto the record from business-

to-business websites and Maycarrier's own website indicating that

Maycarrier and Naike shared contact information and personnel in

their sales and management departments.   See CR 108 at 4-7.

Specific evidence included: several websites listed a telephone

number for Naike's sales department that is identical to the number

Maycarrier listed for its sales department on its own website;

Maycarrier's general manager, Eileen Chen, "manage[d] online sales

for both Maycarrier and Naike," and shared a mobile number with

Naike's chairman; Maycarrier's profiles on "tradezz.com" and on

"tradekr.com" list Maycarrier's phone number but direct users to

"naikefood.com"; Maycarrier and Naike are both listed as members of

a "Weifang Naike Group"; several websites list Naike's employees as

contacts for Maycarrier; and Lily Pan, an employee of Naike, posted

sales information to Maycarrier's profiles on several websites.

See id.  Given this evidence, Commerce concluded that Maycarrier and Naike "appear indifferent to which of the two companies makes a sale and receives the associated sales revenue."  PR 194 at 5-6.

        During the review, Maycarrier provided Commerce with copies of its tax returns and those of Yishi Hengshun Food Co., Ltd. ("Hengshun"), a company operating in Shandong Province that produces subject merchandise.  See Maycarrier's Supplemental Questionnaire Response, Exhs. 3, 13 (Jul. 20, 2012), A-570-831, CR 44, 45.  Commerce located Hengshun's records in the Shandong Province National Taxation Bureau's online database, but could not locate Maycarrier's records.  See Analysis of Maycarrier's New Shipper Sales (Oct. 18, 2012), A-570-831, CR 73 at 6.  Maycarrier explained that the "Confidential Administration Provision on Tax Payers" ("CAP") for Qingdao City provided that its records were confidential and therefore unavailable by internet search.  Maycarrier's Second Supplemental Questionnaire Response (Dec. 13, 2012), A-570-831, CR 94 at 1.  Commerce determined that the terms of the CAP conflicted with Maycarrier's argument.  See CR 108 at 2.  Specifically, Commerce found that Article 4 of the CAP stated that certain information was confidential, but did not define what information qualified as confidential.  Id.  Furthermore, Article 2, which defined confidential information, did not list the tax payer's name, identification number, or the existence of its record as confidential.  Id. at 3.  Commerce concluded that Maycarrier's

failure to explain the absence of its tax records was further evidence that it was not an independent entity.  See PR 194 at 5.

Maycarrier also provided Commerce with a copy of its business registration form with an accompanying translation.  CR 94, Exh. 2.  Although it originally translated the "enterprise status" portion of the form as "[[                    ]]," id., Maycarrier subsequently amended the translation to "[[

        ]]."  Maycarrier's Third Supplemental Questionnaire Response (Jan. 22, 2013), A-570-831, CR 100 at 2.  Commerce determined that a more accurate translation was "[[

    ]]" or "[[                        ]]," indicating that Maycarrier was "connected to another entity."  CR 108 at 8.

Given the record as a whole, Commerce concluded that "the companies are essentially the same."  PR 194 at 5.  Commerce rescinded the review because Maycarrier did not report Naike's earlier sales of subject merchandise in violation of 19 C.F.R. § 351.214(b)(2)(iv).[2]  Final Rescission, 78 Fed. Reg. at 18,317. Because it was no longer reviewing Maycarrier's sales, Commerce declined to assign Maycarrier a separate rate, PR 194 at 8-9, and noted that Maycarrier's entries would continue to be assessed at the PRC-wide rate.  See Final Rescission, 78 Fed. Reg. at 18,317.

---

[2] Commerce also upheld its finding in the preliminary results that Maycarrier's NSR request was untimely under 19 C.F.R. 351.214(c).  See PR 194 at 4.

Maycarrier raises several challenges to the <u>Final Rescission</u>: (1) Commerce erroneously rescinded the NSR; (2) Commerce erroneously declined to assign Maycarrier a separate rate; and (3) Commerce erroneously imposed an adverse facts available ("AFA") rate of $4.71/kg that was unsupported by substantial evidence and contrary to law. <u>See</u> Pl.'s Br. at 25–46.

## JURISDICTION and STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006) and section 516A(a)(2)(B)(iii) of the Tariff Act of 1930,[3] as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006).

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 477 (1951). It is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." <u>Consolo v. Federal Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). In

---

[3] Further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2006 edition, and all applicable amendments thereto.

determining whether a decision was supported by substantial evidence, the Court's role is to "assess[] whether [Commerce's] action is reasonable given the record as a whole." Since Hardware (Guangzhou) Co. v. United States, 37 CIT __, __, 911 F. Supp. 2d 1362, 1365 (2013) (citing Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006)).

Additionally, "an agency's construction of its own regulations is entitled to substantial deference." Lyng v. Payne, 476 U.S. 926, 939 (1986).

## DISCUSSION

### I. Legal Framework

Commerce shall, upon request, conduct a review of a exporter or producer who did not export subject merchandise to the U.S. during the period of investigation or is not affiliated with an entity that exported subject merchandise to the U.S. during that period to determine whether that exporter or producer is eligible for an "individual" rate. 19 U.S.C. § 1675(a)(2)(B)(i). Section 1675(a)(2)(B) "enables a new shipper 'to demonstrate that it should be accorded a dumping rate specific to itself, and not the 'all-others' rate.'" Hebei New Donghua Amino Acid Co. v. United States, 29 CIT 603, 604, 374 F. Supp. 2d 1333, 1335 (2005) (citing Tianjin Tiancheng Pharm. Co. v. United States, 29 CIT 256, 256, 366 F. Supp. 2d 1246, 1247 (2005)).

Commerce's regulations set out requirements for an

exporter or producer to obtain an individual rate through a NSR. First, the exporter or producer must certify that it neither exported subject merchandise during the period of investigation nor is affiliated with an entity that did so.  See 19 C.F.R. § 351.214(b)(2)(i)-(iii) (2012).  It must also certify the date of first entry of subject merchandise, the volume of that entry and all later entries, and the date of first sale to an unaffiliated customer in the U.S.  Id. at § 351.214(b)(2)(iv).  Commerce explained that "[t]he purpose of these certifications is to ensure that new shipper status is not achieved through mere restructuring of corporate organizations or channels of distribution," and that "parties will not be granted new shipper status merely because they were not individually examined during the investigation." Antidumping Duties, 61 Fed. Reg. 7308, 7318 (Feb. 27, 1996).

Finally, the exporter or producer must request the NSR within one year after the date of first entry of subject merchandise.  See 19 C.F.R. § 351.214(c).  Commerce included this provision to clarify that "the statute is intended to provide a new shipper an opportunity to obtain its own rate on an expedited basis, and not to permit shippers to request expedited reviews long after the first shipment has taken place." Antidumping Duties, 61 Fed. Reg. at 7318.

## II. The Final Rescission was Supported by Substantial Evidence and Otherwise in Accordance with Law.

Maycarrier argues that the <u>Final Rescission</u> must be remanded because Commerce lacked authority to rescind the NSR under 19 C.F.R. § 351.214(b) or (c); Commerce did not determine that Maycarrier was "affiliated" with Naike; and record evidence established that Maycarrier was independent from Naike. <u>See</u> Pl.'s Br. at 25-36.

### A. Commerce's Authority to Rescind the NSR

First, Maycarrier argues that Commerce lacked authority to rescind the NSR under 19 C.F.R § 351.214(b) or (c). <u>See</u> Pl.'s Br. at 29. According to Maycarrier, Commerce may rescind an NSR only under the situations prescribed in 19 C.F.R. § 351.214(f): either the party requesting the NSR voluntarily withdraws its request or there was not a sale to an unaffiliated customer during the review period. Pl.'s Reply at 7. Because neither of these situations occurred during the NSR, Maycarrier argues that the <u>Final Rescission</u> violated Commerce's regulations. <u>Id.</u> at 10.

The Court expressly rejected this argument in <u>Marvin Furniture (Shanghai) Co. v. United States</u>, 36 CIT __, 867 F. Supp. 2d 1302 (2012) (Tsoucalas, J.), <u>appeal docketed</u> No. 13-1156 (Fed. Cir. Jan. 11, 2013). In that case, Commerce rescinded the NSR because Marvin Furniture (Shanghai) Co., Ltd. ("Marvin"), did not accurately report the date of first entry of subject merchandise. <u>Id.</u> at __, 867 F. Supp. 2d at 1306. Marvin contested Commerce's authority to rescind the NSR, but the Court held that "the

rescission was based on an application of the express provisions of the relevant statutes and regulations." Id. at __, 867 F. Supp. 2d 1308. The Court found that a NSR request "provides the basis upon which Commerce can undertake the review," and therefore Commerce cannot engage in a NSR "[i]f a new shipper request does not provide Commerce with accurate information regarding an exporter or producer's entries." Id., 867 F. Supp. 2d at 1308.

As noted above, the regulations ensure that NSRs are available to qualified new shippers only and prevent entities from attempting to obtain a lower rate by obscuring earlier sales. See Antidumping Duties, 61 Fed. Reg. at 7318. Given the deference accorded to Commerce's interpretation of its own regulations, Lyng, 476 U.S. at 939, the court continues to find that Commerce properly rescinds a NSR where the request is inaccurate or infirm. See Marvin, 36 CIT at __, 867 F. Supp. 2d at 1308.

### B. "Affiliate" Standard

Maycarrier also argues that "Commerce failed to apply the proper standard of 'affiliation'" when analyzing Maycarrier's relationship with Naike. Pl.'s Reply at 10–11; see Pl.'s Br. at 27. According to Maycarrier, "Congress determined . . . that 'affiliated' is the operative relationship to disqualify a new shipper in the case of a connection to a company involved in sales of subject merchandise during the [period of investigation]." Id. Maycarrier continues that "[a] similar relationship must exist in

respect to a 'connection' for reporting sales within the one-year limit specified in Commerce's regulations." Id. Because Commerce did not conclude that Maycarrier was affiliated with Naike, Maycarrier insists that the Final Rescission is contrary to statute and regulation. Id. at 29.

Maycarrier's argument is incorrect. Maycarrier borrows the "affiliation" standard from 19 U.S.C. § 1675(a)(2)(B), which applies to sales during the period of investigation. 19 U.S.C. § 1675(a)(2)(B). However, Commerce did not rely on section 1675(a)(2)(B) when rescinding the review. Rather, Commerce determined that Maycarrier failed to report its first sale, in violation of 19 C.F.R. § 351.214(b)(2)(iv), and did not timely file its NSR request. Final Rescission, 78 Fed. Reg. at 18,317; PR 194 at 4. As noted above, these regulations require that an exporter or producer certify certain information about its first entry and sale, and request a review within one year of its first sale. 19 C.F.R. § 351.214(b)(2)(iv), (c). They do not mention "affiliation" with another exporter or producer who made earlier sales, id., and Maycarrier does not cite any authority supporting its position. See Pl.'s Br. at 27; Pl.'s Reply at 10-11. Because it is inconsistent with the plain text of the regulations, Maycarrier's argument must fail. 19 C.F.R. § 351.214(b)(2)(iv), (c).

### C. Record Support for Commerce's Determination

Finally, Maycarrier alleges that Commerce's determination

that Maycarrier was the same entity as Naike was not supported by substantial evidence.  See Pl.'s Br. at 25-36.  Maycarrier insists that Commerce unreasonably relied on information it obtained from its "cyber investigation" of the two companies and erroneously interpreted evidence regarding Maycarrier's tax returns and registration form.  See id.  Ultimately, Maycarrier insists that Commerce did not have sufficient evidence to define the relationship between the two entities and therefore the Final Rescission must be remanded.  See id.

          As noted above, the Court reviews Commerce's conclusions to determine whether they were supported by substantial evidence and in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  Here, Commerce's finding was reasonable given the record as a whole.

### (i) Business-to-business Websites

          Maycarrier insists that Commerce erroneously relied on the information it discovered on business-to-business websites. Pl.'s Br. at 28-31.  To illustrate that the information was not reliable, Maycarrier identifies three individual errors in its brief:  (1) "Nobodybuy.com" listed Eileen Chen as a contact for Naike but does not mention garlic or Maycarrier; (2) "allbiz.com" inconsistently translated Naike and Weifang Naike Group from the Chinese characters; and (3) "B2B77.com" noted that Maycarrier did not provide a company introduction on its company profile.  Id. at 30-31.  Maycarrier also insists that Naike or another entity

fraudulently posted this information because, as it explained to Commerce, "companies such as Naike make exaggerated and inaccurate claims on websites." Id. at 28. Neither of these arguments is sufficient to undermine Commerce's decision.

The record includes over two-dozen websites listing information indicating that the companies share contact, management, and personnel information, as well as direct sales to one another. See CR 108 at 4-7 (detailing the instances of overlapping information). Commerce acknowledged that the websites contained certain errors, but concluded that, taken as a whole, they represent a consistent pattern in which Maycarrier and Naike represented themselves interchangeably. Id. Given the repeated instances of overlapping information, the relatively minuscule errors Maycarrier identifies on individual web pages do not render Commerce's decision erroneous. See Hoogovens Staal BV v. United States, 24 CIT 242, 247, 93 F. Supp. 2d 1303, 1307 (2000) (citing Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 936 (Fed. Cir. 1984)) ("[T]hat plaintiff can point to evidence . . . which detracts from . . . [Commerce's] decision and can hypothesize a . . . basis for a contrary determination is neither surprising nor persuasive.") (alterations in original).

Furthermore, Maycarrier's claim that Naike fraudulently posted the information to exaggerate its own business is unavailing. Maycarrier insists that it is common in the PRC for

companies to misrepresent themselves on the internet, and therefore the information Commerce obtained is inaccurate.  Pl.'s Br. at 31. However, Maycarrier does not identify any evidence in the record that supports this claim, see id., and its explanation is actually contradicted by the record: Commerce found that Naike's profile on certain websites directed potential customers to Maycarrier, indicating that the Naike actually promoted Maycarrier's business. See CR 108 at 6.  Maycarrier's alternative explanation of the evidence, by itself, is an insufficient basis upon which to overturn Commerce's determination.  See Consolo, 383 U.S. at 620.

### (ii) Registration Form

Maycarrier also argues that Commerce mistranslated the "enterprise status" section of its business registration form as "[[                    ]]" or "[[                    ]]." See Pl.'s Br. at 32-33.  According to Maycarrier, the proper translation is "[[                ]]," which indicates that it is an independent entity.  Id. at 33.  As evidence, Maycarrier points to the translation on the record of the Company Law of the PRC ("Company Law"), in which the same characters as those in Maycarrier's enterprise status are translated as "[[

]]."  Id.  Maycarrier insists that "[c]learly this translation affirms Maycarrier's translation."  Id.

Maycarrier's argument is unpersuasive.  The translated section of the Company law reads: "[[

]]."

Id. (emphasis in Pl.'s Br.).  Contrary to Maycarrier's insistence,

this section of the Company Law does not "clearly" establish that

"[[                    ]]" is the proper translation.  Maycarrier

posits an alternative interpretation of the quoted language, but

does not provide any evidence demonstrating that Commerce's

interpretation was erroneous.  Again, an alternative interpretation

of the evidence, by itself, is insufficient to undermine Commerce's

conclusion.  See Consolo, 383 U.S. at 620.

### (iii) Tax Records

Finally, Maycarrier alleges that Commerce's analysis of

its tax records was unsupported by substantial evidence.  Pl.'s Br.

at 33-36.  According to Maycarrier, Commerce's translation of the

CAP provisions was unreasonable because it is not qualified to

interpret Chinese law.   See id. at 35 (comparing Commerce's

translation to "the Chinese government interpreting U.S. tax laws

and how they are administered").  Maycarrier argues that, under the

CAP in Qingdao City, its tax records are confidential and

undiscoverable by internet search, and therefore it was

unreasonable for Commerce to expect to discover its tax records in

the online database.  See Pl.'s Reply at 19.  Maycarrier insists

that Commerce should have verified this argument by consulting the U.S. Embassy in Beijing, searching for the tax records of another company registered in Qingdao City, or requesting information from the Chinese government.  See Pl.'s Br. at 35.

This argument is unavailing.  Maycarrier does not provide any authority supporting its position that Commerce is unqualified to analyze the operation of foreign laws.  See id. at 35. Regardless, Commerce analyzed the terms of the CAP because Maycarrier placed them onto the record to support its position.  CR 108 at 1-4 (analyzing the terms of the CAP).  Based on this evidence, Commerce found that it should have been able to confirm the existence of Maycarrier's records on the online database.  Id. at 2-4.  Maycarrier contests this interpretation, but it fails to identify any record evidence supporting its argument other than its own interpretation of the CAP.  Pl.'s Br. at 35; Pl.'s Reply at 19. Such an argument is inadequate to justify overturning Commerce's determination.  See Consolo, 383 U.S. at 620.  Furthermore, Maycarrier's insistence the Commerce was required to consult non-record sources to produce evidence supporting Maycarrier's interpretation of the CAP is inapposite.[4]  See Qingdao Sea-line

---

[4] Maycarrier also argues that Commerce's translation of the CAP and the business registration certificate constituted new information on the record to which Commerce did not allow Maycarrier a response.  See Pl.'s Br. at 33, 35.  However, Maycarrier's claim lacks merit because it originally translated its enterprise status at "[[                    ]]" and placed the

Trading Co. v. United States, 36 CIT __, __, Slip Op. 12-39 at 19
(Mar. 21, 2012) ("[I]t was simply not Commerce's duty to help
[Plaintiff] create an adequate record to support its position.").

Because Maycarrier fails to demonstrate that Commerce's
determination was unsupported by substantial evidence, the court
finds that Commerce reasonably concluded that Maycarrier was
"essentially the same" as Naike.  See Since Hardware, 37 CIT at __,
911 F. Supp. 2d at 1365 (citing Nippon Steel, 458 F.3d at 1350-51).

### III. Maycarrier was not Eligible for a Separate Rate

Maycarrier also challenges Commerce's decision not to
assign a separate rate.  Pl.'s Br. at 24-25, 36-37.  According to
Maycarrier, it satisfied the requirements for a separate rate,
having timely submitted its section A questionnaire addressing its
independence from the Chinese government.  Id. at 24.  Accordingly,
Maycarrier insists that Commerce should have assigned a separate
rate or transferred the evidence to the seventeenth administrative
review of fresh garlic from the PRC ("17th AR"), which covered the
period of Maycarrier's sales.  Id. at 36.

In antidumping duty proceedings, Commerce establishes an
individual rate for mandatory respondents and a country-wide rate
for all others.  19 U.S.C. § 1673d(c)(1)(B)(i).  When merchandise
is from a non-market economy, as it is here, Commerce presumes that

---

untranslated sections of the CAP onto the record.  See CR 94 at 1
& Exh. 2.

all non-mandatory respondents are government controlled and therefore those respondents are subject to the country-wide rate. See Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997). Commerce does allow a non-mandatory respondent to overcome this presumption, however, if it can establish the absence of both de jure and de facto government control. Id. If the non-mandatory respondent makes such a showing, Commerce assigns a separate rate, normally calculated by weight-averaging the individually-calculated rates. See Changzhou Wujin Fine Chem. Factory Co. v. United States, 37 CIT __, __, Slip Op. 13-127 at 3-4 (Oct. 2, 2013).

Here, Commerce determined that it had no basis to assign Maycarrier a separate rate because it rescinded the review and was no longer reviewing Maycarrier. PR 194 at 8-9. Maycarrier's insistence that Commerce was required to review its section A questionnaire and assign a separate rate is not consistent with the statutory framework for NSRs. The statute states that Commerce shall conduct a NSR to "establish an individual weighted average dumping margin." 19 U.S.C. § 1675(a)(2)(B)(i) (emphasis added). Once Commerce determined that Maycarrier was not a new shipper eligible for an individual rate, the review ended and Maycarrier's goods remained subject to the rate already in place, the PRC-wide rate. See Final Rescission, 78 Fed. Reg. at 18,317. Therefore, Commerce properly determined that there was no basis to consider Maycarrier's separate rate eligibility. See 19 U.S.C. §

1675(a)(2)(B)(i).

Alternatively, Maycarrier insists that Commerce erred in failing to exercise its authority to transfer the record of the NSR to the 17th AR.  See Pl.'s Br. at 36-37.  Maycarrier relies on Fresh Garlic From the PRC: Final Rescission of NSRs of Jining Yifa Garlic Produce Co., Ltd., Shenzhen Bainong Co., Ltd., and Yantai Jinyan Trading Inc., 76 Fed. Reg. 52,315 (Aug. 22, 2011) ("Jinyan NSR"), in which Commerce rescinded Yantai Jinyan Trading Inc.'s NSR and transferred its record to the concurrent administrative review. See Pl.'s Br. at 37.  Commerce responds that Maycarrier failed to exhaust its administrative remedies with regards to this claim because it did not request that Commerce transfer the record during the NSR.  Def.'s Resp. Opp. Pl.'s Mot. J. Agency R. at 39 ("Def.'s Resp.").  Accordingly, Commerce insists that the court should not consider Maycarrier's argument on the merits.  Id.

As a general rule, the Court "shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  "The exhaustion doctrine requires a party to present its claims to the relevant administrative agency for the agency's consideration before raising these claims to the Court."  Luoyang Bearing Corp. v. United States, 28 CIT 733, 760, 347 F. Supp. 2d 1326, 1351 (2004) (citing Unemployment Compensation Comm'n v. Aragon, 329 U.S. 143, 155 (1946)).  However, the Court recognizes certain exceptions to the rule: (1) where raising the claim would

be futile; (2) where there has been an intervening court decision that may materially affect Commerce's determination; (3) where the question is one of law and did not require further factual development; and (4) where there was no reason to believe Commerce would refuse to adhere to applicable precedent.  <u>See</u> <u>id.</u> at 761 n.11, 347 F. Supp. 2d at 1352 n.11.

There is no dispute that Maycarrier did not request to have the record transferred during the NSR.  Def.'s Resp. at 39; Pl.'s Reply at 25.  Additionally, Maycarrier neither alleged that Commerce failed to transfer evidence during the review, nor raised the <u>Jinyan NSR</u> before Commerce in support of such a claim. <u>See</u> Case Brief of Maycarrier (Feb. 11, 2013), A-570-831, CR 104. Maycarrier instead argues that Commerce previously rejected its request to participate in the 17th AR, and therefore would not have accepted a transfer request.  Pl.'s Reply at 25.

The futility exception arises where, if the exhaustion requirement was enforced, "parties would be required to go through obviously useless motions in order to preserve their rights." <u>Corus Staal BV v. United States</u>, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (internal quotation marks omitted).  A party may not rely on this exception, however, simply because "an adverse decision may have been likely."  <u>Id.</u>

Here, there is no evidence that the transfer request would have been "obviously useless."  Maycarrier requested that

Commerce transfer certain documents to the NSR from the 17th AR. See Request for Clarification of Case Brief Schedule and Request for Department to Place Surrogate Country and Surrogate Values Data from the Garlic 17th AR on the Record of this NSR (Jan. 9, 2013), A-570-831, PR 160.  If Maycarrier wanted Commerce to transfer its section A questionnaire or any other evidence to the concurrent administrative review, it was aware of its right and had the opportunity to do so.  Accordingly, the futility exception does not apply.  Corus Staal, 502 F.3d at 1379.  Because Maycarrier did not request that Commerce transfer evidence to the 17th AR, it failed to exhaust administrative remedies with regards to this claim.  See 28 U.S.C. § 2637(d).

### IV. Commerce did not Make an AFA determination

Finally, Maycarrier argues that in refusing to assign a separate rate, Commerce effectively imposed an AFA rate without first meeting the statutory requirements.  Pl.'s Br. at 37. Specifically, Maycarrier notes that Commerce did not find that it failed to cooperate to the best of its ability during the review. Id.  Moreover, Maycarrier adds that the AFA rate is wrongful because Commerce failed to corroborate the $4.71/kg rate during the sixteenth administrative review of fresh garlic from the PRC ("16th AR").  Id. at 38-46.

Where Commerce "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply

with a request for information," it "may use an inference that is
adverse to the interests of that party." 19 U.S.C. § 1677e(b). If
it "relies on secondary information rather than on information
obtained in the course of an investigation or review" when making
such an inference, Commerce "shall, to the extent practicable,
corroborate that information from independent sources that are
reasonably at [its] disposal." Id. at § 1677e(c).

    Maycarrier's argument is based on the mistaken belief
that Commerce "imposed" the AFA rate in the Final Rescission. As
noted above, Commerce rescinded the NSR and, as a result,
Maycarrier's entries remained subject to the PRC-wide rate. Final
Rescission, 78 Fed. Reg. 18,317. Commerce did not make a decision
on the merits concerning the assessment rate on Maycarrier's
entries. See PR 194 at 8-9. Accordingly, Commerce neither made an
AFA determination nor imposed an AFA rate.[5] See Huaiyang Hongda
Dehydrated Vegetable Co. v. United States, 28 CIT 1944, 1953-54
(2004) (not published in the Federal Supplement) (Commerce did not
impose an AFA rate where it rescinded an administrative review and
the AFA rate from an earlier review remained in place).

    Furthermore, the only review currently before the court
is the Final Rescission. Because Commerce did not make an AFA

---

    [5] Commerce argues that Maycarrier failed to exhaust its
administrative remedies with regards to its AFA claim. See Def.'s
Resp. at 30-34. As Commerce did not make an AFA determination the
court need not reach a decision on this issue.

determination and did not impose any rate based upon secondary information, PR 194 at 3-9, there was no information that Commerce was required to corroborate in the NSR.  See 19 U.S.C. § 1677e(c). Maycarrier's corroboration claim concerning the 16th AR is not properly before the court and the court lacks jurisdiction over this claim.  See Huaiyang Hongda, 28 CIT at 1954 (finding that the Court lacks jurisdiction over plaintiff's claim that Commerce failed to corroborate an AFA rate that was not imposed during the proceeding before the Court).

## CONCLUSION

The Final Rescission was supported by substantial evidence and otherwise in accordance with law.  Because Commerce rescinded the review, Maycarrier was not entitled to a separate rate.  Additionally, Commerce did not impose an AFA rate and the court lacks jurisdiction over Maycarrier's claim concerning corroboration of the assessment rate.  Plaintiff's motion for judgment on the agency record is denied and judgment will be entered accordingly.


                                        /s/ Nicholas Tsoucalas
                                       **Nicholas Tsoucalas**
                                          **Senior Judge**

**Date: December 13, 2013**
      **New York, New York**